## SILVER LAKE ASSEMBLY v. HARD.

(Supreme Court, Appellate Division, Fourth Department.   May 12, 1909.)

1. RELIGIOUS SOCIETIES (§ 20*)—CAMP MEETING ASSOCIATION—CONVEYANCES OF LOTS—LIABILITIES OF SUBSEQUENT PURCHASERS.

A camp meeting association conveyed several tent lots by deeds, providing that they were accepted with the express agreement that they were not to be transferred without the consent of its trustees, and that they were subject to an annual tax not exceeding a certain amount, which should be a lien thereon, and which was thereafter assessed in conformity to its by-laws to pay its expenses, and a subsequent purchaser of the lots acquired the same by deeds with the consent of its trustees, and each of the deeds was accepted subject to the provisions in the contract in the original deeds, and expressly provided that the lots should be subject to the lien of the annual tax. *Held* that, whether or not the covenants or conditions contained in the original deeds ran with the land, the purchaser was to pay back taxes, and took the property subject to the lien therefor, because of the provision contained in the deeds to him, accepted presumably with knowledge that the taxes had not been paid.

[Ed. Note.—For other cases, see Religious Societies, Dec. Dig. § 20.*]

2. RELIGIOUS SOCIETIES (§ 20*) — CAMP MEETING ASSOCIATION—CONVEYANCE OF LOTS—WAIVER OF RESTRICTIONS, CONDITIONS, AND COVENANTS—LIABILITY OF LOT OWNER FOR ASSESSMENTS.

A camp meeting association did not waive the restrictions, limitations, and covenants in deeds of lots on its grounds because it did not insert the same in prior mortgages of its property which expressly excepted lots which had been sold, and the execution and delivery thereof and the acquisition of title to the property on foreclosure by the trustees named therein did not relieve the owner from the taxes otherwise properly assessed by the association against the same, or relieve the lots from the lien thereof imposed by his deeds, the mortgages having been given with the full knowledge and consent of his grantors, and he with like knowledge of all the facts having accepted his deeds with the same restrictions, conditions, and covenants, as were in the deeds to his grantors, the meetings never having been interrupted, and the association having reacquired its mortgaged property before he purchased his lots.

[Ed. Note.—For other cases, see Religious Societies, Dec. Dig. § 20.*]

3. SUBMISSION OF CONTROVERSY (§ 17*)—PERSONS NOT PARTIES—DETERMINATION OF RIGHTS.

The rights of persons not parties to a submission of a controversy cannot be determined.

[Ed. Note.—For other cases, see Submission of Controversy, Dec. Dig. § 17.*]

Submission of controversy between the Silver Lake Assembly as plaintiff and William W. Hard as defendant. Judgment ordered in favor of plaintiff.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

G. M. W. Bills, for plaintiff.

Frederick A. Mann, for defendant.

McLENNAN, P. J.   The question presented by this submission is: Has the plaintiff the right to collect or enforce the payment of a tax assessed by it upon three certain lots owned by the defendant, and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

which form a part of plaintiff's camp meeting grounds situate on the shores of Silver Lake, in the town of Castile, county of Wyoming, N. Y.?

The plaintiff was originally organized pursuant to chapter 252, p. 538, Laws 1857, under the name of the "Genesee Camp Grounds Association," and was known as such until 1895, when by act of the Legislature its name was changed to "Silver Lake Assembly." Laws 1895, p. 1326, c. 634. The purpose of plaintiff's incorporation was to promote religion by means of camp meetings, to be held under the direction and control of the Genesee Annual Conference of the Methodist Episcopal Church and in accordance with the tenets of such church. By the original act and the acts supplemental thereto and amendatory thereof the plaintiff was empowered to acquire, hold, and control property, both real and personal, for the purpose of its incorporation, and to enable it to hold camp meetings, its primary object. It was provided that its affairs and business should be managed and conducted by a board of trustees, who were authorized to make rules and regulations and adopt by-laws for the government of the corporation and the management of its property. Immediately after its incorporation, the plaintiff, under the direction of its board of trustees, commenced to hold and conduct camp meetings under the direction of the Genesee Annual Conference, and has continued so to do annually until the present time, and it acquired, through bequests and otherwise, a considerable amount of property. Between the month of December, 1873, and the month of August, 1880, it acquired by several deeds of conveyance certain pieces or parcels of woodland, situate on the south shore of Silver Lake, in the town of Castile, Wyoming county, in all about 50 acres. It inclosed the same, mapped and plotted it into streets, avenues, parks, tent and cottage lots, erected an auditorium in which to hold its meetings, and other buildings for the accommodation of those attending such meetings, provided a water supply, laid sidewalks, established and maintained a lighting system, provided for the collection of garbage, and made other improvements which were necessary or convenient for the comfort of those occupying tents or cottages on the grounds during the camp meeting season, and also for transient guests, and the plaintiff has annually held camp meetings on such grounds from the time it acquired the same. Of the 50 acres so purchased the plaintiff sold about 300 lots, which were shown upon the map made by it, to various individuals, and executed and delivered to each purchaser a deed which provided, in substance, that he would use and occupy the lot so conveyed to him in conformity to the rules and regulations made or adopted by plaintiff's board of trustees. Each deed also contained the provision that it was accepted by the purchaser "with the express understanding and agreement that the premises thus conveyed are for temporary occupancy during the summer and fall months; that they cannot be assigned or transferred without the consent and approval of the aforesaid trustees; that they are subject to an annual tax, which shall be a lien thereon, of a sum not exceeding five dollars; also that in case a promissory note shall be given by the party of the second part as a consideration for this conveyance and said note shall

remain unpaid for the period of one year after its maturity, without the consent of the party of the first part, then this instrument shall be deemed, and at the option of the party of the first part declared null and void, and the lot herein described shall revert to the said party of the first part." It is conceded that the taxes, which were mentioned in said deed and which were assessed upon the lots by the plaintiff, were so assessed in conformity to the by-laws which had been duly adopted by the plaintiff, and also that such taxes, the entrance and license fees, and voluntary contributions constituted plaintiff's only sources of revenue, and upon which it was obliged to depend to defray the expenses of carrying on its religious and educational operations and for holding camp meetings, which was its primary object. The by-laws, which were duly adopted and in force at all of the times in question, provided for the assessment and collection of an annual tax on each lot of the character of the defendant's of $2, and it provided that such tax should be due and payable at such time during the assembly season and at such place on the grounds as the tax collector should appoint for the collection of taxes. Of the 300 lots sold by the plaintiff the purchasers of about 150 of them had erected cottages thereon, and the by-laws provided that each lot on which a cottage was erected should be assessed or taxed $4 annually.

On the 17th day of November, 1908, the defendant acquired title to three of the tent lots, so called, being numbers 184, 186, and 304, which are the subject of this controversy, by deeds dated that day, made and executed and delivered to him by one L. M. Hard, who had·previously obtained title to the same as follows: On September 9, 1889, the plaintiff duly conveyed lots Nos. 184 and 186 to one Mary J. Platt, she paying the purchase price in cash, and immediately entered into possession of the same. On September 20, 1889, she conveyed said lots to said L. M. Hard, who entered into and continued in possession of the same until he conveyed to this defendant. On the 8th day of August, 1888, plaintiff conveyed lot No. 304 to one F. C. Spellman, he paying the purcha'se price in cash and entering into and continuing in possession of the same until he conveyed the lot to said L. M. Hard. Then, on November 17, 1908, as we have seen, L. M. Hard, being the owner of the three lots, conveyed the same to this defendant. Each of such deeds, including those executed and delivered by L. M. Hard to the defendant, was made and accepted subject to the provisions, conditions, and contracts contained in the original deeds of said lots executed by the plaintiff, to which attention has been called, and which contained an express provision that "they (said lots) are subject to an annual tax, which shall be a lien thereon, of a sum not exceeding five dollars," and each of such deeds was made with the consent and approval of the trustees of the plaintiff, in accordance with the provisions of its by-laws, and which consent and approval were necessary in order to enable such conveyance to be made. So that the defendant is in the situation of having accepted deeds of the three lots in question, and of having obtained the consent of the plaintiff to such conveyance to him, with the condition, written therein, that they were liable to an annual tax of not to exceed $5,

which should be a lien thereon. The tax of $2 per lot levied upon the three lots in question for the years 1889 and 1890 was paid, but such tax assessed against said lots for the years 1891 to 1901, both inclusive, and for the years 1907 and 1908, amounting to $26 on each lot, has not been paid, making a total of $78, for which it is claimed the defendant is liable and which it is urged constitutes a lien upon the lots so owned by him. During the years 1902 to 1906 no assess-ment of taxes was made against said lots and no taxes were collected, by reason of facts to which attention will be called.

There is no pretense that, when the defendant accepted the convey-ances of the lots in question, he did not know that the annual tax as-sessed upon such lots had not been paid, that he did not know of the action taken by the trustees in the premises, and that he was not fully advised of all the facts. Before the submission of this controversy, the plaintiff demanded payment from the defendant of the amount of taxes assessed against each of said three lots owned by him, viz., $26, making a total of $78, and also demanded payment of the sum assessed against each lot from his respective grantors, all of which was refused. The defendant waives the defense of the statute of lim-itations, but resists payment upon the ground, among others, that the provisions and covenants contained in the deeds referred to do not run with the land, and that, therefore, he is not liable for any tax levied upon the lots in question prior to the time when he acquired title to the same, and that, in no event, did such tax become a lien upon such lots.

The question whether or not the covenants or conditions contained in the original deeds executed by the plaintiff to its immediate gran-tees were of such character as to run with the land is not important to determine, because such covenants and conditions were carried in-to and made a part of the deeds which the defendant accepted, and presumably only because they contained such provisions did the plain-tiff consent to the conveyance of the lots in question to the defendant. For all practical purposes the defendant in 1908 entered into a new agreement of purchase with the plaintiff. He said, in substance, to it: I want to become the owner of the three lots in question, and there-by become a member of your association, and entitled to all the rights and privileges accruing by reason of such relation. In order to accom-plish such purpose, it is necessary that you should consent to and ap-prove of the purchase of such lots by me. The plaintiff gave its con-sent and approval, but only upon condition that such conveyance should contain the same provisions as were contained in the deeds originally executed by it. It must be conceded, I think, that such tax was a lien upon the lots while the title remained in the original grantees, and it is not conceivable that, when the plaintiff consented that the conveyance should be made to the defendant, it intended to discharge the lien of the taxes which had accumulated for 12 years and to surrender the security afforded it by such lien, especially when it insisted that the conveyance which it did approve should contain the provision that:

"They [the lots] are subject to an annual tax, which shall be a lien there-on, of a sum not exceeding five dollars."

So that we conclude that wholly independent of the question whether or not the covenants and conditions contained in the original deeds run with the land, because of the provision contained in the deed to the defendant and accepted by him, presumably with knowledge that the taxes assessed against the lots purchased by him had not been paid, and which by the conveyances executed by the plaintiff were made a lien thereon, he thereby became liable to pay such back taxes, and that he took the property subject to the lien for the amount thereof. It appears, however, that the plaintiff in the course of its operations incurred certain floating indebtedness, and that on or about the 1st day of February, 1891, "with the full knowledge, consent, and approval of said tent and cottage lot owners and members," for the purpose of paying such floating indebtedness and for providing proper equipment for its grounds, duly issued bonds to the amount of $10,-000, and duly executed a mortgage to secure the payment of such bonds, which covered all its lands and real property at Silver Lake, excepting its trust estate, and excepting, also, the said 300 lots which it had theretofore sold to private individuals, including the lots owned by the defendant. Said mortgage made no reference in terms to the conditions, limitations, and contracts which were contained in the deeds executed and delivered by the plaintiff to the cottage and tent lot owners. On or about the 13th day of August, 1896, for the like purpose, and with the like knowledge and consent of the lot owners, plaintiff executed a second mortgage to secure the payment of bonds to the amount of $15,000 issued by it, but from this mortgage was also excepted all the interest in the lots which had theretofore been conveyed to individuals, and did not cover those owned by the defendant, and the second mortgage did not contain the conditions, limitations, or contracts which were contained in the deeds and delivered by the plaintiff to the lot owners.

On or about the 7th day of March, 1898, one Jessie J. Crandall recovered a judgment against the plaintiff in the Supreme Court for the sum of $602.05. Default having been made in the payment of the principal and interest of said first and second mortgage bonds, on the 13th day of June, 1902, the property covered by the first mortgage was foreclosed and was sold to one Frank H. Hamlin, as trustee for the holders of said first series of bonds, and on the 4th day of November, 1902, the property covered by the second mortgage was sold upon foreclosure to one Frank J. Smythe, as trustee for the owners of the bonds secured by the second mortgage. Thereafter execution was issued upon the Crandall judgment, and under it on the 1st day of August, 1905, all the interest which the plaintiff had March 7, 1908, in and to the lands constituting its camp grounds, except such tent and cottage lots as had been theretofore sold, was sold to one Graves, the owner of said judgment, and a certificate of sale was issued to him July 31, 1905. Such certificate was assigned by said Graves to one Stoody for the benefit of the plaintiff, and on September 20, 1906, it was assigned by Stoody to the plaintiff, and on the 16th day of January, 1907, the sheriff duly executed and delivered to plaintiff a deed of all the lands sold under said execution sale, and said judgment was duly satisfied of record. During the balance of the

year 1902, and after the foreclosure of the mortgages referred to had taken place, and during the years 1903, 1904, and 1905, and down to the 20th day of September, 1906, the title to said lands covered by said mortgages remained in said Hamlin and Smythe, but which, it will be borne in mind, did not include any of the lands which had been sold by the plaintiff to individuals, and did not include any of the lots acquired by the defendant. During said period from 1902 to 1906, both inclusive, the plaintiff, by permission of Hamlin and Smythe, continued to hold its camp meetings upon said grounds, using the buildings thereon as formerly, and affording practically the same accommodations to the lot owners as before. Negotiations were had between the plaintiff and said Hamlin and Smythe by which on the 20th day of September, 1906, plaintiff, by deeds, assignments, and transfers from Hamlin and Smythe, reacquired the title to all the lands covered by said mortgages, and which had been sold upon foreclosures thereof. During the period when the title to the premises was in Hamlin and Smythe no assessment of taxes was made, and no taxes were collected by the plaintiff, although during all of that time the camp meetings were held, and those attending and occupying their lots enjoyed practically all the advantages and facilities theretofore enjoyed by them.

It is insisted by the defendant that the plaintiff, by the execution of the two mortgages in question without inserting therein the conditions, limitations, and contracts contained in the deeds originally executed and delivered by it to the purchasers of cottage and tent lots, waived the restrictions, conditions, and covenants contained in such deeds. It appears that while the title to the real property covered by the mortgages was in the trustees, Hamlin and Smythe, certain of the lot owners conveyed the same without inserting in such conveyances such restrictive conditions or covenants, but none of such deeds or conveyances were consented to or approved by the plaintiff or any one acting for or on its behalf. Neither Hamlin nor Smythe assumed to convey any lots to which they had title as trustees, but reconveyed the same to plaintiff in precisely the same situation in that regard as when they obtained title. As we have seen, the deeds which the defendant accepted contained precisely the same provisions, conditions, contracts, and limitations as were contained in the original deeds executed by the plaintiff to his grantors. We conclude that the execution and delivery by the plaintiff of the mortgages in question and the acquisition of the title to the mortgaged property upon foreclosure by the trustees named therein did not relieve the defendant from his obligation to pay the taxes assessed against his lots, or relieve such lots from the lien thereof. Such mortgages were given with the full knowledge and consent of defendant's grantors, and deeds of the lots, containing the provisions referred to, were accepted by him with like knowledge of all the facts.

The proposition is not involved. The plaintiff had acquired certain real estate for the purposes of its incorporation. It sold a certain portion of it (three hundred lots) upon certain conditions, which imposed certain obligations upon the purchasers, and which were agreed to by them and by their grantees so far as the lots in question are

concerned, and the same conditions were inserted in and made a part of the deeds which the defendant accepted. Subsequent to making such original sales, with the consent of the grantees, the plaintiff sold its remaining real estate without condition for the purpose of protecting its property and to enable it to perform its corporate functions. How can it be said that such subsequent sale made under such conditions destroyed the obligations incurred by the purchasers of the lots which the plaintiff had previously sold and conveyed to them, and which were written into each of such conveyances? If while the title was in the trustees they had conveyed such a substantial part of the camp grounds as to render the balance unsuitable for the conduct of the work for which the plaintiff was organized, another question would be presented; but nothing of the kind was done. The trustees held the title to the mortgaged premises for a time, when the plaintiff again acquired it, and in the meantime there was no interruption in the conduct of plaintiff's camp meetings or in its religious work. As we have seen, after plaintiff had reacquired all of such mortgaged property, the defendant purchased his lots and sought and obtained plaintiff's consent to and approval of such purchase by him, and presumably such consent and approval was given because the deeds which he accepted contained the provision to which attention has been called.

It is urged on behalf of the defendant that because certain of the original lot owners during the time the title to the mortgaged property was in the trustees sold lots, and gave deeds of the same which did not contain the conditions, limitations, and contracts which were made a part of the original deeds, such grantees are in no manner bound by such conditions, limitations, and contracts, but hold the title to the lots purchased by them free and clear of all such obligations, notwithstanding the conveyances to them were made without the consent and approval of the plaintiff. How many of such conveyances were made does not appear. Neither are we informed whether such grantees are insisting that the obligations assumed by the grantees in the original deeds are not binding upon them, or that they or either of them have refused to pay the annual tax assessed against their respective lots. But, at all events, we cannot upon this submission determine the rights of such grantees in the premises, because they are not parties to this submission, and, indeed, the question may never arise, because, for aught we know, they may be willing to comply with the provisions contained in the original deeds made and executed by the plaintiff, and the provision of the by-laws adopted by it which requires that the owner of each lot should pay annually the sum of $2 and that such sum should be a lien upon his lot. The defendant is in a situation entirely different from such grantees, because, as pointed out, presumably after the knowledge that such sales had been made by the original lot owners, and deeds given not containing such conditions as were contained in the original deeds, he accepted his deeds, which did contain such provisions, and he procured the consent and approval of the plaintiff to his purchase, presumably because such provisions were made a part of his deeds.

We conclude that the plaintiff is entitled to judgment against the defendant for $78, being the total amount of taxes assessed against his three lots and remaining unpaid, to wit, the sum of $26 against each of such lots, and that execution may issue therefor, and that, in case such judgment is not paid, the plaintiff is entitled to sell such lots in the manner provided by law, and that out of the proceeds realized upon such sale there shall first be paid the costs and expenses of sale, and then the amount of such tax to the plaintiff, and the balance of the proceeds, if any, to the defendant, and that such lots shall be sold upon condition that the purchasers shall take and hold the property subject to all the conditions and contracts contained in the original deeds made by the plaintiff, and which were made a part of the deeds to the defendant.

Judgment is ordered in favor of the plaintiff accordingly, but without costs of this submission to either party. All concur.